**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JEFFREY S.,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

**Case No. 1:25-cv-00555**

**OPINION AND ORDER**

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for disability insurance benefits. That final decision was issued by the Appeals Council on May 12, 2025. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 7) and the Commissioner filed a similar motion (Doc. 9). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

Plaintiff applied for disability benefits on December 23, 2022, alleging that he became disabled on April 9, 2022. After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on May 21, 2024. Plaintiff, his wife, and a vocational expert, Chandra Griffin, testified at the hearing.

On July 24, 2024, the ALJ issued an unfavorable decision. In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2028. Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. He then determined that Plaintiff suffered from one severe impairment, that being epilepsy. He further found that this impairment did not meet the requirements for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a limited range of light work, concluding that he could not work at unprotected heights or around vibration or dangerous machinery. Additionally, he could bend, twist, squat, kneel, crawl, and climb (but not ropes, ladders, or scaffolds) only occasionally, but he could handle and finger bilaterally. Also, Plaintiff could not operate left or

right foot controls, and he was capable only of simple, routine, repetitive work that did not require teamwork or working closely with the public, although he could occasionally interact with others.

Plaintiff had past relevant work as a maintenance mechanic, heating and air conditioning installer, and a corrections officer. The ALJ found that he could no longer perform any of those jobs, but he could do unskilled light jobs such as marker, routing clerk, and housekeeper. The ALJ also concluded that such jobs existed in significant numbers in the national economy. As a result, he found that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises two issues, stated *verbatim* as follows:

1. The ALJ improperly evaluated the opinion of NP Bidjov.

2. The ALJ failed properly to evaluate Plaintiff's subjective complaints or his wife's testimony pursuant to SSR 16-3p.

Plaintiff's memorandum, Doc. 7-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 44 years old at the time of the first administrative hearing, first testified that He lived at home with his wife and three children. He had a high school diploma and a driver's license. His last day of work was December 4, 2022, when he was working as a federal detention officer. He stopped working due to his epilepsy. Before that, he had a job servicing industrial refrigeration units.

When asked about his epilepsy, Plaintiff said that he experienced seizures more than a few times a year. He was taking medication to prevent seizures. Plaintiff also said that he experienced neuropathy in his toes and fingers constantly and that it was a side effect of his medications. He could lift ten pounds, walk carefully, stand for up to an hour, and sit for four hours. Plaintiff testified that he was able to do both household and outdoor chores an d could also go fishing and attend athletic events for his children. In the months before the hearing, he had had four seizures, and he also said he suffered from fatigue due to his medications. Finally, he testified that he had short-term memory issues and relied on his wife to help him recall things.

Plaintiff's wife also testified at the hearing. She said that Plaintiff had ten seizures in the past year with the longest convulsive seizure lasting about three minutes. She also confirmed that he had memory issues and at times seemed confused.

The vocational expert, Ms. Griffin, first identified Plaintiff's past jobs as maintenance

mechanic, air conditioner installer and servicer, and corrections officer. She was then asked questions about a person with Plaintiff's vocational profile who could work at the light exertional level but who could not sit, stand, or walk for a total o eight hours in a workday, who could lift no more than ten pounds, and who had seizures that would cause more than four work absences per month. She responded that such a person could not be gainfully employed. She was then asked questions about a person who could work at the sedentary exertional level and who had certain environmental, postural, and manipulative limitations and who also was limited to routine work with occasional interaction with others. She said that such a person could not do Plaintiff's past work or any sedentary jobs, but could do light jobs such as marker, routing clerk, or housekeeper/cleaner. She also gave numbers for those jobs as they existed in the national economy. Lastly, she said that someone who experienced a medical event every other month that took him off task for an hour and which interrupted the workplace could not be employed.

### B. The Medical Evidence

Treatment notes show that Plaintiff experienced single seizures in 2018 and 2019. Subsequent notes from Batavia Medical Center show that in April of 2022 Plaintiff experienced a seizure at work that caused him to crash the vehicle he was driving. He was taken to the hospital and started on medication. A later EEG was read as abnormal. By October of 2022 he had not had any additional seizures, but in December he experienced another one, again while driving a vehicle. His medication was then increased and he was seizure-free as of July, 2023. However, between that date and December of 2023 he had three more seizures and his medication was increased again. He had another seizure in April of 2024.

### C. Opinion Evidence

Plaintiff was seen by Dr. Dantoni (whose speciality is noted as obstetrics and gynecology) on May 10, 2023, for a consultative internal medicine examination. Plaintiff reported four seizures in the past six months. His physical exam, including grip and strength testing, was normal. Dr. Dantoni diagnosed epilepsy under poor control and thought Plaintiff should avoid operating mechanical equipment and should not work around unprotected heights. She did not impose any other physical limitations. (Tr. 627-29). A psychiatric evaluation done the same day did not reveal any psychological disorders, (Tr. 635-37), and that was the same opinion given by the state agency reviewer. A letter from Plaintiff's family doctor stated that due to his epilepsy, Plaintiff was "unable to perform his work duties." (Tr. 640).

On July 28 2023, Nurse Practitioner Bidjov completed a form indicating that Plaintiff's condition satisfied section 11.02© of the Listing of Impairments. She noted that he suffered from seizure activity every 2-3 months and that he was left confused with altered awareness afterward, (Tr. 739-40).

The relevant state agency opinions came from Dr. Miller and Dr. Koenig. Dr. Miller concluded, on June 21 2023, that Plaintiff could work at all exertional levels but could

occasionally climb stairs and ramps and balance, could never climb ladders, ropes, and scaffolds, and had to avoid all exposure to workplace hazards. Dr. Koenig's opinion was essentially the same except the restriction in balancing was frequent rather than occasional.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. The ALJ's Decision

The ALJ, at step three of the sequential evaluation process, determined that Plaintiff's epilepsy did not satisfy section 11.02 of the Listing of Impairments. That section describes an impairment that includes either generalized tonic-clonic seizures occurring either once a month for three consecutive months or at least every two months for four consecutive months despite treatment, or dyscognitive seizures occurring at least weekly for three consecutive months, plus a marked limitation in one of five different areas of functioning. The ALJ reviewed the treatment notes and determined that Plaintiff's seizures were not frequent enough to satisfy these criteria, and he also concluded that there was no evidence of a marked limitation in any of the five

pertinent areas of functioning.

Next, the ALJ summarized the testimony from the hearing and determined that it was not entirely consistent with the medical record. The ALJ then summarized the treatment records but did not point out how that record conflicted with Plaintiff's testimony or that of his wife. Next, the ALJ considered the opinion evidence and adopted the state agency reviewers' opinions in part as to physical limitations adding restrictions stemming from Plaintiff's sleep apnea and neuropathy. He then repeated his conclusion that Ms. Bidjov's opinion did not support a finding of disability under Listing section 11.02. The ALJ did find Dr. Dantoni's opinion persuasive, and he added mental restrictions due to Plaintiff's epilepsy, fatigue, and medication side effects that were not specified in the opinions about mental functional capacity. He concluded that his residual functional capacity finding was sufficient to accommodate all of Plaintiff's impairments.

## IV. DISCUSSION

Plaintiff has raised two issues in his memorandum, but only the second one needs to be addressed here. In that contention, Plaintiff asserts that the ALJ did not comply with SSR 16-3p when evaluating Plaintiff's and his wife's testimony. The Court agrees that the ALJ erred in his consideration of that testimony.

SSR 16-3p provides that in evaluating a claimant's testimony as to symptoms caused by an objectively-established medical condition, an ALJ must consider the entire record, including "the objective medical evidence," the person's "statements about the intensity, persistence, and limiting effects of symptoms," and "statements and other information provided by medical sources and other persons" as well as "any other relevant evidence in the individual's case record." The ALJ is directed to consider the extent to which an individual's statements are consistent with the medical evidence and also whether they are consistent with other statements the individual has made and with evidence from "any other sources that might have information about the individual's symptoms...." There are seven factors listed which inform the ALJ's inquiry, and they include the effectiveness of medication in managing symptoms and the individual's treatment history. Finally, and most importantly in this case, the regulation states that in the decision, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Rather,

> [t]he determination must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Here, the ALJ never explained why he determined (if, in fact, that is what he did) that some or all of the statements made in the record, by Plaintiff in his testimony, by Plaintiff to his treating medical sources, and by Plaintiff's wife, were inconsistent with the record. He also

made no finding as to the extent and frequency of Plaintiff's seizures, nor did he include a description of those seizures in any of the hypothetical questions posed to the vocational expert. His decision appears to be a textbook example of an adjudicator's having made only a conclusory statement about consistency with the record that provides no basis for a subsequent reviewer, let alone the claimant, to assess how and why he made that finding.

This Court has not hesitated to remand cases such as this when the necessary basis for a consistency finding is lacking. *See, e.g., Elizabeth J.Z.,* 2026 WL 879270 (W.D.N.Y. March 31, 2026) (a decision in which the Court also observed, at *6, that "a summary of the medical records is not a substitute for properly assessing Plaintiff's subjective symptoms."). *See also Joseph v. O'Malley*, 772 F. Supp. 3d 265, 277 (E.D.N.Y. 2024) ("The failure to properly consider the credibility factors is erroneous."). A remand is therefore necessary in order for the AL to make a proper assessment of the consistency and supportability of the evidence relating to Plaintiff's seizures, their frequency, nature, duration, and effects on functioning, and to factor that assessment into any residual functional capacity finding concerning Plaintiff's ability to function in the workplace in light of those seizures.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 9), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**